01

02

03

04

05 UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
06 AT SEATTLE

07 MELISSA ASHLEY WINSOR,        )   CASE NO. C13-1098-MJP-MAT
                                          )
08      Plaintiff,              )
                                            )
09      v.                    )   REPORT AND RECOMMENDATION
                                          )   RE: SOCIAL SECURITY DISABILITY
10 CAROLYN W. COLVIN, Acting     )   APPEAL
Commissioner of Social Security,   )
                                            )
11                                           )
     Defendant.            )
12 _____ )

13       Plaintiff Melissa Ashley Winsor proceeds through counsel in her appeal of a final

14 decision of the Commissioner of the Social Security Administration (Commissioner).  The

15 Commissioner denied plaintiff's applications for Supplemental Security Income (SSI) and

16 Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ).

17 Having considered the ALJ's decision, the administrative record (AR), and all memoranda, the

18 Court recommends this matter be AFFIRMED.

19 **FACTS AND PROCEDURAL HISTORY**

20       Plaintiff was born on XXXX, 1983.[1]   She obtained her GED and previously worked as

21

22      1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of
Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case

REPORT AND RECOMMENDATION
PAGE -1

01  a janitor, hardware salesperson, truck and trailer rental clerk, fast food worker, floor installer,

02  and medical equipment tech.   (AR 32, 47.)

03       Plaintiff filed applications for SSI and DIB in October 2010, alleging disability since

04  October 13, 2009.   (AR 177-82.)   Her applications were denied initially and on

05  reconsideration, and she timely requested a hearing.

06       ALJ Stephanie Martz held a hearing on February 6, 2012, taking testimony from

07  plaintiff and a vocational expert (VE).   (AR 40-66.)   On April 19, 2012, the ALJ rendered a

08  decision finding plaintiff not disabled.   (AR 22-34.)   Plaintiff timely appealed.

09       The Appeals Council denied plaintiff's request for review on May 22, 2013 (AR 1-7),

10  making the ALJ's decision the final decision of the Commissioner.   Plaintiff appealed this

11  final decision of the Commissioner to this Court.

12                                   **JURISDICTION**

13       The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

14                                    **DISCUSSION**

15       The Commissioner follows a five-step sequential evaluation process for determining

16  whether a claimant is disabled.   *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).   At step one, it

17  must be determined whether the claimant is gainfully employed.   The ALJ found plaintiff had

18  not engaged in substantial gainful activity since October 13, 2009, the alleged onset date.   At

19  step two, it must be determined whether a claimant suffers from a severe impairment.   The

20  ALJ found plaintiff's fibromyalgia, trochanteric bursitis, cervicalgia, cervical radiculitis, and

21  shoulder impingement, status post arthroscopy with subacromial decompression severe.   She

22

Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
PAGE -2

01   found no severe mental impairment.   Step three asks whether a claimant's impairments meet or

02   equal a listed impairment.   The ALJ found plaintiff's impairments did not meet or equal the

03   criteria of a listed impairment.

04         If a claimant's impairments do not meet or equal a listing, the Commissioner must

05   assess residual functional capacity (RFC) and determine at step four whether the claimant has

06   demonstrated an inability to perform past relevant work.   The ALJ found plaintiff had the RFC

07   to perform sedentary work, with the following exceptions:   she can lift and carry ten pounds

08   occasionally and less than ten pounds frequently; she can sit for about six hours in an eight-hour

09   workday, and stand and/or walk for about two hours in an eight-hour workday with regular

10   breaks; and she can reach, handle, and finger frequently.   With this RFC, the ALJ found

11   plaintiff unable to perform any past relevant work.

12         If a claimant demonstrates an inability to perform past relevant work, the burden shifts

13   to the Commissioner to demonstrate at step five that the claimant retains the capacity to make

14   an adjustment to work that exists in significant levels in the national economy.   With

15   consideration of the Medical-Vocational Guidelines and VE testimony, the ALJ concluded

16   there were jobs existing in significant numbers in the national economy plaintiff could perform,

17   such as work as a stuffer of toy and sports equipment, surveillance systems monitor, and

18   telemarketer.   The ALJ, therefore, concluded plaintiff was not disabled at any time since the

19   application date.

20         This Court's review of the final decision is limited to whether the decision is in

21   accordance with the law and the findings supported by substantial evidence in the record as a

22   whole.   *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).   Substantial evidence means

REPORT AND RECOMMENDATION
PAGE -3

01   more than a scintilla, but less than a preponderance; it means such relevant evidence as a

02   reasonable mind might accept as adequate to support a conclusion.   *Magallanes v. Bowen*, 881

03   F.2d 747, 750 (9th Cir. 1989).   If there is more than one rational interpretation, one of which

04   supports the final decision, the Court must uphold that decision.   *Thomas v. Barnhart*, 278

05   F.3d 947, 954 (9th Cir. 2002).

06       Plaintiff argues the ALJ erred in rejecting a treating physician's opinion, in relation to

07   the VE testimony at step five, in failing to find a severe mental impairment, and in assessing her

08   credibility.   She requests remand for an award of benefits or, in the alternative, for further

09   administrative proceedings.   The Commissioner maintains the ALJ's decision has the support

10   of substantial evidence and should be affirmed.

11                        Physician's Opinions as to Physical Limitations

12       Plaintiff argues the ALJ erred in rejecting the opinions of her treating physician, Dr.

13   Kelly Evans, as to her functional limitations and in finding she can frequently perform reaching,

14   handling, and fingering.   Dr. Evans assessed plaintiff on a number of occasions with

15   limitations amounting to less than sedentary work.   (AR 370-73, 378, 453-54, 551-62.)   In

16   March 2011, for example, Dr. Evans assessed plaintiff as able to stand/walk and sit for zero to

17   two hours in an eight-hour day, unable to lift any weight, rarely able to finger, grasp, handle,

18   stoop, or crouch, and subject to missing work more than four days per month.   (AR 378.)

19       The ALJ gave little weight to the opinions of Dr. Evans, concluding they appeared to be

20   based on plaintiff's subjective self-report and that plaintiff's treatment records reflect minimal

21   objective findings supporting the opined limitations.   (AR 28-30.)   The ALJ elaborated:

22       . . . Dr. Evans' treatment notes reflect minimal objective findings.   She has

REPORT AND RECOMMENDATION
PAGE -4

01      recorded that the claimant has "some" tenderness and reduced range of motion.
     She has also noted that the claimant has disc protrusions.   However, she has not
02      explained how these findings show that the claimant cannot work an 8-hour day,
     be unable to sit or stand and/or walk for more than 2 hours, or would cause 4 or
03      more absence in a month.   Further, Dr. Evans has not explained why the
     claimant would be unable to perform a sedentary job that did not require a
04      significant amount of time walking or standing.

05 (AR 30.)   The ALJ afforded some weight to the contradictory opinion of reviewing State

06 agency physician Dr. Robert Hoskins, who found plaintiff capable of light work, with no other

07 physical limitations.   (AR 30-31, 91-92.)   The ALJ assessed plaintiff as limited to sedentary

08 work, with additional limitations, based on evidence received at the hearing and giving plaintiff

09 "some benefit of the doubt[.]"   (AR 31.)

10         As a treating physician, the opinions of Dr. Evans were entitled to greater weight than

11 the opinions of non-examining physician Dr. Hoskins.   *Lester v. Chater*, 81 F.3d 821, 830 (9th

12 Cir. 1996) (more weight given to opinions of treating physician than to non-treating physician,

13 and more weight to opinion of examining physician than to non-examining physician).   Given

14 the existence of contradictory opinion evidence, the ALJ was required to provide "'specific and

15 legitimate reasons' supported by substantial evidence in the record" for rejecting the opinions

16 of Dr. Evans.   *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

17 *See also id.* at 831 ("The opinion of a nonexamining physician cannot by itself constitute

18 substantial evidence that justifies the rejection of the opinion of either an examining physician

19 or a treating physician."), and *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995) ("[T]he

20 report of a nonexamining, nontreating physician need not be discounted when it 'is not

21 contradicted by *all other evidence* in the record.'") (quoting *Magallanes*, 881 F.2d at 752

22 (emphasis in original)).

REPORT AND RECOMMENDATION
PAGE -5

01        Plaintiff provides a lengthy description of the medical evidence of record as supporting

02  a greater degree of functional limitations.  (*See* Dkt. 16 at 5-18.)  She points to various

03  objective findings by Dr. Evans and from other medical providers on examination, such as

04  hesitancy or pain with movement, tenderness in the right shoulder, positive trigger points, and

05  limitation in range of motion (*see*, *e.g.*, AR 326-29, 356, 399, 401, 405, 408-09), as well as

06  testing results, including x-rays documenting OS acromiale of the right shoulder and a nerve

07  conduction study showing a C6 radiculopathy (AR 356-57, 405).  Plaintiff observes that an

08  ALJ may only reject a doctor's opinion if the opinion was *substantially* based on *incredible*

09  claimant testimony.  *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)

10  ("A physician's opinion of disability 'premised to a large extent upon the claimant's own

11  accounts of his symptoms and limitations' may be disregarded where those complaints have

12  been 'properly discounted.'") (quoted sources omitted).   Pointing to her fibromyalgia, plaintiff

13  argues the ALJ erred in "'effectively requiring "objective" evidence for a disease that eludes

14  such measurement.'" *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (quoting

15  *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003)).

16        Plaintiff also contends the ALJ failed in her duty to develop the record in not obtaining

17  prior Department of Social and Health Services paperwork completed by Dr. Evans, as well as

18  other medical records, pointing to paperwork she provided to the Appeals Council for review.

19  (AR 551-65.)  Plaintiff maintains that, given the failure to provide adequate reasoning in

20  relation to Dr. Evans, her opinion should be credited as a matter of law and benefits awarded.

21  *Lester*, 81 F.3d at 834.   However, for the reasons set forth below, the Court finds no error in the

22  ALJ's consideration of the medical evidence.

REPORT AND RECOMMENDATION
PAGE -6

01          "[T]he ALJ is responsible for determining credibility, resolving conflicts in medical

02    testimony, and for resolving ambiguities." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.

03    1998) (citing *Andrews*, 53 F.3d at 1039).   *Accord Carmickle v. Comm'r of SSA*, 533 F.3d 1155,

04    1164 (9th Cir. 2008); *Thomas*, 278 F.3d at 956-57.   The ALJ must support her findings with

05    "specific, cogent reasons." *Reddick*, 157 F.3d at 722 (citing *Rashad v. Sullivan*, 903 F.2d

06    1229, 1231 (9th Cir. 1990)).   When evidence reasonably supports either confirming or

07    reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ.   *Tackett*

08    *v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

09          The ALJ in this case described the medical record in detail.   She noted, for example,

10    plaintiff's report at a pain clinic, in both September 2009 and January 2011, of moderate pain

11    and moderate functional limitation interfering "only with some daily activities."   (AR 27-28

12    (citing AR 282-83, 355-57).)   The ALJ took note of imaging results, including a September

13    2009 MRI showing only "minimal" disk bulges, not resulting in any neural impingement, the os

14    acromiala of the right shoulder found in July 2010, an "unremarkable" October 2010 MRI of

15    plaintiff's thoracic spine, and an October 2010 MRI of her lumbar spine showing "no

16    significant abnormality."   (AR 27-28 (citing AR 287-88, 481-83).)   The ALJ also took note of

17    various observations and findings on examination by a number of different medical providers,

18    including, *inter alia*, plaintiff's "mildly symptomatic" right shoulder impingement with os

19    acromiale in September 2010 (AR 27 (citing AR 327-28)), a November 2010 opinion that

20    plaintiff's neck and shoulder pain were muscle-spasm mediated and should be treated with

21    physical therapy (*id*. (citing AR 375-77)), a March 2011 finding of no muscle strength loss and

22    no sensory deficits (AR 28 (citing AR 363-66)), and an April 2011 finding of "mildly positive

01 Hawkins impingement test," positive Spurling test, and that she was "neurovascuarly intact in

02 the bilateral upper extremities[,]" (AR 29 (citing AR 440-41).

03      The ALJ also focused specifically on the records from Dr. Evans and acknowledged that

04 physician's objective findings.   (*See* AR 28-30.)   However, she also noted the limited or

05 minimal nature of Dr. Evans' findings.   (*See*, *e.g.*, *id*. ("On examination, Dr. Evans noted that

06 the claimant had "*some* hesitancy with movement of both of her arms, with '*some*' pain'

07 especially at shoulder level."; "She has *normal* range of motion bilaterally of the shoulder and

08 *some* pain with neck movement."; "exam reflects *minimal* objective findings.") (citing AR 389,

09 408-09, 457; emphasis added.)   The ALJ additionally described more recent imaging results,

10 including a November 2011 MRI showing "minor disc protrusions at C5-6 and C6-7, without

11 significant spinal stenosis or neural foraminal narrowing[]" and that was "otherwise normal[,]"

12 and a November 2011 MRI showing "Os acromiale, with minimal bone edema and adjacent

13 soft tissue edema[,]" and "[v]ery mild subacromial- subdeltoid brusistis." (AR 30 (citing AR

14 541-42).)   The ALJ further observed that, following a January 2010 arthroscopy of the right

15 shoulder with subacromial decompression, plaintiff was referred to physical therapy and her

16 rehabilitation was "not expected to be a long-term process."   (*Id*. (citing AR 535, 547-49).)

17 Finally, with respect to plaintiff's fibromyalgia argument, it should be noted that the ALJ found

18 that condition severe, along with several other physical impairments.   (AR 24.)

19      Given the above, the ALJ can be said to have reasonably construed the medical record

20 as reflecting Dr. Evans' reliance on plaintiff's subjective reports, which the ALJ properly found

21 not credible for the reasons discussed below.   *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1228

22 (9th Cir. 2009) (ALJ may reasonably discount a physician's prescription of work restrictions

01 based on claimant's less than credible statements); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041

02 (9th Cir. 2008 ("An ALJ may reject a treating [or examining] physician's opinion if it is based

03 'to a large extent' on a claimant's self-reports that have been properly discounted as

04 incredible.") (quoting *Morgan*, 169 F.3d at 602).   She also reasonably found the opinions not

05 supported by the objective medical evidence in Dr. Evans' treatment notes or the other

06 objective medical evidence.   *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)

07 (rejecting physician's opinion due to discrepancy or contradiction between opinion and the

08 physician's own notes or observations is "a permissible determination within the ALJ's

09 province."); *Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician,

10 including a treating physician, if that opinion is brief, conclusory, and inadequately supported

11 by clinical findings.")   *See also Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2004)

12 (a treating physician's opinions may be discounted when it is "in the form of a checklist, did not

13 have supportive objective evidence, was contradicted by other statements and assessments of

14 [the claimant's condition], and was based on [the claimant's] subjective descriptions of pain[,]"

15 as well as when that opinion is "conclusory, brief, and unsupported by the record as a whole . .

16 . or by objective medical findings[.]")

17        Plaintiff presents an alternative interpretation of the medical record.   However, as

18 argued by the Commissioner, plaintiff's interpretation, even if reasonable, does not

19 demonstrate a lack of substantial evidence support for the ALJ's equally reasonable

20 interpretation.   *Morgan*, 169 F.3d at 599 ("Where the evidence is susceptible to more than one

21 rational interpretation, it is the ALJ's conclusion that must be upheld.") (citing *Andrews*, 53

22 F.3d at 1041).   The ALJ further reasonably considered the existence of contradictory opinion

01  evidence from a non-examining physician, but gave plaintiff the benefit of the doubt in finding

02  her more limited than assessed by that physician.   (AR 30-31.)

03       Finally, plaintiff fails to demonstrate that the additional records provided to the Appeals

04  Council detract from the substantial evidence support for the ALJ's decision.   In fact, as

05  observed by the Commissioner, some of the assessments from Dr. Evans reflect plaintiff's

06  ability to perform a range of sedentary work (AR 556-58, 563-65), while a June 2012

07  examination by another physician reveals no joint deformities, full range of motion without

08  pain, and normal gait and station (AR 593-96).   For this reason, and for the reasons set forth

09  above, the Court finds no error established in relation to Dr. Evans or the medical record as a

10  whole.

                            <u>VE Testimony at Step Five</u>

11

12       Plaintiff avers reversible error in the failure to proffer a hypothetical to the VE limiting

13  her to frequent reaching, handling, and fingering.   (*See* AR 64-65.)   As plaintiff observes, a

14  hypothetical posed to a VE must include all of the claimant's functional limitations supported

15  by the record.   *Thomas*, 278 F.3d at 956 (citing *Flores v. Shalala*, 49 F.3d 562, 520-71 (9th Cir.

16  1995)).   A VE's testimony based on an incomplete hypothetical lacks evidentiary value to

17  support a finding that a claimant can perform jobs in the national economy.   *Matthews v.*

18  *Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (citing *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th

19  Cir. 1991)).   *Accord Lewis v. Apfel*, 236 F.3d 503, 517-18 (9th Cir. 2001).

20       Also, the Dictionary of Occupational Titles (DOT) raises a rebuttable presumption as to

21  job classification.   *Johnson v. Shalala*, 60 F.3d 1428, 1435-36 (9th Cir. 1995).   Pursuant to

22  Social Security Ruling (SSR) 00-4p, an ALJ has an affirmative responsibility to inquire as to

01   whether a VE's testimony is consistent with the DOT and, if there is a conflict, determine

02   whether the VE's explanation for such a conflict is reasonable. *Massachi v. Astrue*, 486 F.3d

03   1149, 1152-54 (9th Cir. 2007).

04        In this case, the VE testified that an individual could perform the jobs identified by the

05   ALJ at step five in response to a hypothetical that did not contain any limitations on reaching,

06   handling, or fingering.  (AR 64.)   When asked whether a limitation to only occasional

07   reaching, handling, and fingering would eliminate those jobs, the VE responded that "all those

08   jobs require fingering, feeling, manipulation on a continual basis."  (AR 65.)   As the

09   Commissioner notes, the use of the term "continual" differs from the terms of art utilized in the

10   DOT – including "frequently," meaning "from 1/3 to 2/3 of the time," and "constantly,"

11   meaning from 2/3 or more of the time."   DOT, App. C.   The ALJ failed to inquire into the

12   VE's understanding as to the term continual, or to proffer a hypothetical specifying a limitation

13   to frequent reaching, handling, and fingering.   The ALJ also did not, subsequent to the VE's

14   testimony, confirm its consistency with the DOT.   The ALJ did, on the other hand, initially

15   obtain from the VE agreement to advise her as to any conflict in his testimony with the DOT.

16   (AR 62.)   The ALJ further, in her decision, noted the omission of the limitation at issue in the

17   hypothetical to the VE, but clarified that review of the DOT shows that the jobs identified by

18   the VE do not require more than frequent reaching, handling, and fingering.   (AR 33.)

19        While the ALJ appears to have obtained sufficient testimony on the issue of consistency

20   with the DOT, she erred in failing to obtain testimony from the VE based on a complete

21   hypothetical.   However, for the reasons set forth below, the Court concludes that the ALJ's

22   step five error should be deemed harmless.

REPORT AND RECOMMENDATION
PAGE -11

01        As a general principle, an ALJ's error may be deemed harmless where it is

02 "'inconsequential to the ultimate nondisability determination.'" *Molina v. Astrue*, 674 F.3d

03 1104, 1115 (9th Cir. 2012) (cited sources omitted).   The Court looks to "the record as a whole

04 to determine whether the error alters the outcome of the case."   *Id.*   At step five, for example,

05 the failure to obtain confirmation as to the consistency of a VE's testimony with the DOT can

06 be deemed harmless where a plaintiff fails to identify any actual conflict with the DOT.

07 *Rushing v. Astrue*, No. 08-36001, 2009 U.S. App. LEXIS 28292 *4 (9th Cir. Dec. 23, 2009)

08 (citing *Massachi*, 486 F.3d at 1153-54 [n. 19] ("This procedural error could have been

09 harmless, were there no conflict, or if the vocational expert had provided sufficient support for

10 her conclusion so as to justify any potential conflicts, as in *Johnson*. Instead, we have an

11 apparent conflict with no basis for the vocational expert's deviation."))

12        In this case, while failing to include the limitation in the hypothetical to the VE, the ALJ

13 properly took administrative notice that the DOT does not require more than frequent reaching,

14 handing, or fingering for the jobs identified at step five.   *See* 20 C.F.R. §§ 404.1566, 416.966

15 (at step five, the Commissioner takes administrative notice of reliable job information in DOT

16 and other publications).   Indeed, as set forth in the Selected Characteristics of Occupations

17 (SOC), the surveillance system monitor job (DOT 379.367-010) does not require any reaching,

18 handling, or fingering (i.e., activity or condition "not present" in job), while the toy and sport

19 equipment stuffer job (DOT 731.685-014) requires frequent reaching and handling and only

20 occasional fingering, and the telemarketer job (DOT 299.357-014) requires only occasional

21 reaching and handling, and frequent fingering.   U.S. Dep't of Labor, Selected Characteristics

22 of Occupations Defined in the Revised Dictionary of Occupational Titles Appx. C (1993).   As

REPORT AND RECOMMENDATION
PAGE -12

01 such, with consideration of both the VE testimony and the evidence from the DOT and SOC,

02 any error in relation to the limitation to frequent reaching, handling, and fingering can be

03 deemed harmless.  *Rushing*, 2009 U.S. App. LEXIS 28292 at *3-4 (ALJ's error in crafting

04 hypothetical to VE harmless where VE testified claimant could perform a job, the

05 Commissioner properly took administrative notice that the job identified did not require the

06 restriction on use of hands or wrists, and the job existed in significant numbers in national

07 economy) (citing, in relevant part, 20 C.F.R. § 404.1566(d) and the SOC).

08       In fact, had the VE testified that the jobs identified required more than frequent

09 reaching, handling, and fingering, such testimony would have been in conflict with the DOT

10 and required an explanation for the deviation.  Plaintiff, while disagreeing with the ALJ's

11 conclusion as a general matter (*see* Dkt. 16 at 20), provides no support for the contention that

12 the jobs identified at step five are precluded by the RFC assessed.   The Court, as such, finds the

13 error in the hypothetical, and any error in relation to an inquiry into DOT consistency, harmless

14 based on an absence of evidence of an actual conflict with the DOT.

15                          Mental Impairment

16       Plaintiff assigns error to the ALJ's rejection of diagnoses of mental impairments by

17 treating physician Dr. Evans and nurse practitioner Arthur Kearney.   However, the Court also

18 finds no error established in the ALJ's consideration of plaintiff's mental impairments.

19       The ALJ found no severe mental impairments at step two.  She described plaintiff's

20 consultative evaluation by Dr. Anselm Parlatore in January 2011 and afforded significant

21 weight to his opinion that plaintiff had no psychiatric diagnosis, finding it consistent with the

22 minimal objective evidence to substantiate a mental impairment.  (AR 25, 346-49.)  She also

01   described Kearney's December 2011 evaluation of plaintiff and diagnoses of obsessive/

02   compulsive disorder (OCD), generalized anxiety disorder, major depressive disorder, recurrent,

03   moderate, and cannabis dependence, but concluded she could not use these diagnoses to

04   establish a medically determinable impairment because Kearney is not an "acceptable medical

05   source."[2]   (AR 25, 500-04.)

06        The ALJ next noted plaintiff had attended counseling, but engaged in only conservative

07   treatment for mental complaints.   (AR 25.)   She also discussed the notation of depression and

08   anxiety by treating physician Dr. Evans, but found that "treatment appears to be focused on her

09   physical impairments and not mental conditions."   (*Id*. (citing AR 371).)   The ALJ reasoned:

10        The record does not reflect objective medical evidence to substantiate the
          claimant's subjective complaints of mental problems.   Given the lack of
11        treatment, lack of medications, and Dr. Parlatore's evaluation which found no
          evidence of a mental impairment, I find that the record does not establish a
12        medically determinable mental impairment.   This finding is supported by the
          opinion of a state agency medical consultant, Thomas Clifford, PhD, who
13        reviewed the claimant's records on May 5, 2011 and found that she had no
          mental medically determinable impairment ([AR 86-102]).   This finding is
14        given significant weight as it is consistent with the record.   Thus, I do not find
          that the claimant has a mental medically determinable impairment.

15

16   (AR 25.)

17        The ALJ further found that, even if the evidence could be construed as sufficient to

18   establish a medically determinable mental impairment of anxiety and depression, the evidence

19   did not establish any limitations in the four areas of functioning under the "B" criteria of the

20

21        2 Social Security regulations distinguish between "acceptable medical sources" and "other
     sources."   Acceptable medical sources include, for example, licensed physicians and psychologists,
22   while other non-specified medical providers, such as nurse practitioners, are considered "other sources."
     20 C.F.R. §§ 404.1513(a) and (e), 416.913(a) and (e), and SSR 06-03p.

REPORT AND RECOMMENDATION
PAGE -14

01   listings of impairments.   (AR 25-26.)   That is, she found plaintiff failed to demonstrate any

02   deficits in activities of daily living, social functioning, or concentration, persistence, or pace,

03   and no evidence of any episodes of decompensation.   (*Id.*)

04        At step two, a claimant must make a threshold showing that her medically determinable

05   impairments significantly limit her ability to perform basic work activities.   *See Bowen v.*

06   *Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c).   "Basic work

07   activities" refers to "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. §§

08   404.1521(b), 416.921(b).   "An impairment or combination of impairments can be found 'not

09   severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

10   effect on an individual's ability to work.'"   *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996

11   (quoting SSR 85-28).   "[T]he step two inquiry is a de minimis screening device to dispose of

12   groundless claims."   *Id.* (citing *Bowen*, 482 U.S. at 153-54).   An ALJ is also required to

13   consider the "combined effect" of an individual's impairments in considering severity.   *Id.*

14        A diagnosis alone is not sufficient to establish a severe impairment.   Instead, a claimant

15   must show that her medically determinable impairments are severe.   20 C.F.R. §§ 404.1520(c),

16   416.920(c).   She must, therefore, present evidence of a medically determinable impairment,

17   through signs, symptoms, and laboratory findings, that has lasted or can be expected to last for

18   a continuous period of not less than twelve months.   *Ukolov v. Barnhart*, 420 F.3d 1002,

19   1004-05 (9th Cir. 2005).

20        The ALJ in this case reasonably found an absence of evidence to support the existence

21   of a medically determinable mental impairment.   While Dr. Evans did identify plaintiff's

22   depression, anxiety, and OCD as impacting her condition, she provided no signs, symptoms, or

REPORT AND RECOMMENDATION
PAGE -15

01  clinical findings in support of these diagnoses.   (*See* AR 371.)   Plaintiff points to a May 2011

02  assessment from Dr. Evans as supporting limitations in relation to concentration and task

03  attendance.   (AR 453.)   However, the document cited appears to reflect plaintiff's report of

04  these symptoms and, in fact, detracts from plaintiff's contention that her mental impairments

05  significantly limited her ability to perform work activities.   (AR 453-54 ("The patient does

06  find that her pain causes a lack of concentration and attention pretty much constantly, but she

07  does feel that she is able to work in a low stress job and may be able to do this, but she is limited

08  somewhat by her pain, anxiety, and depression."; " . . . [S]he does have ongoing anxiety and

09  depression which may limit her ability to have a less stressful job."))

10      As the Commissioner observes, "'[r]egardless of how many symptoms an individual

11  alleges, or how genuine the individual's complaints may appear to be, the existence of a

12  medically determinable physical or mental impairment cannot be established in the absence of

13  objective medical abnormalities; i.e., medical signs and laboratory findings[.]'"   *Ukolov*, 420

14  F.3d at 1005 (quoting SSR 96-4p).   The ALJ in this case reasonably considered the absence of

15  any supporting evidence from Dr. Evans, and the fact that both examining physician Dr.

16  Parlatore and non-examining State agency physician Dr. Clifford found no evidence of a

17  medically determinable impairment.   In fact, the only objective evidence from an acceptable

18  medical source in the record consists of the results of Dr. Parlatore's mental status examination

19  (MSE), which, as stated above, revealed an absence of any psychiatric diagnosis.   (AR

20  348-49.)

21      Nor did the ALJ err in declining to use the evidence from nurse practitioner Kearney to

22  establish the existence of a medically determinable mental impairment.   As plaintiff concedes,

REPORT AND RECOMMENDATION
PAGE -16

*once an impairment is established* with evidence from an "acceptable medical source," evidence from "other sources," such as a nurse practitioner, is considered to show the severity of an impairment and how it affects a claimant's ability to work.   20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).  *See also* §§ 404.1513(a), 416.913(a) ("We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s).") Here, as stated above, the record contained no evidence from an acceptable medical source sufficient to establish the existence of a medically determinable mental impairment. Therefore, evidence from nurse practitioner Kearney did not suffice to establish the existence of an impairment.   SSR 06-3p ("Information from these 'other sources' cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source' for this purpose.")

Moreover, the evidence from Kearney does not otherwise support the existence of a medically determinable mental impairment.   That is, outside of diagnoses and plaintiff's report of symptoms, the MSE conducted by Kearney revealed no findings supporting the existence of any mental impairment other than the observation of a "flat, depressed" affect.  (AR 502-03 (noting cooperative, relaxed behavior; mood, speech, and language within normal limits; no anxious behavior; linear, logical, and goal directed thought process with full orientation; ability to perform serial sevens, reverse spelling, item and fact recall, identify similarities and differences, and abstract meaning of proverb; memory intact in all spheres; fund of knowledge above average; and insight and judgment intact and good).)   Plaintiff, as such, fails to demonstrate any error in relation to mental impairments.

/ / /

REPORT AND RECOMMENDATION
PAGE -17

01                                    <u>Credibility</u>

02          Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

03  reject a claimant's testimony.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)

04  (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  *See also Vertigan v. Halter*,

05  260 F.3d 1044, 1049 (9th Cir. 2001).   "General findings are insufficient; rather, the ALJ must

06  identify what testimony is not credible and what evidence undermines the claimant's

07  complaints."  *Lester*, 81 F.3d at 834.  "In weighing a claimant's credibility, the ALJ may

08  consider his reputation for truthfulness, inconsistencies either in his testimony or between his

09  testimony and his conduct, his daily activities, his work record, and testimony from physicians

10  and third parties concerning the nature, severity, and effect of the symptoms of which he

11  complains."  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

12          In this case, the ALJ found that, while plaintiff's medically determinable impairments

13  could reasonably be expected to cause some of the alleged symptoms, she did not find all of

14  plaintiff's symptom allegations credible.   Again, the Court is not persuaded by plaintiff's

15  challenges to the ALJ's decision.

16  A.     <u>Objective Evidence</u>

17          Plaintiff argues error in the ALJ's improper requirement of objective evidence of her

18  degree of pain, both as a general matter and as related to her fibromyalgia.   However, "[w]hile

19  subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated

20  by objective medical evidence, the medical evidence is still a relevant factor in determining the

21  severity of the claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853,

22  857 (9th Cir. 2001); SSR 96-7p.   Also, "[c]ontradiction with the medical record is a sufficient

**REPORT AND RECOMMENDATION**
**PAGE -18**

01  basis for rejecting the claimant's subjective testimony."  *Carmickle*, 533 F.3d at 1161 (citing

02  *Johnson*, 60 F.3d at 1434).   In this case, the ALJ reasonably construed the objective medical

03  evidence as inconsistent with the alleged severity of plaintiff's allegations as one of several

04  different reasons offered in support of the credibility assessment.   (AR 31-32.)

05  B.    Activities

06        Plaintiff next argues the ALJ misstated her ability to perform activities of daily living on

07  a regular basis for a substantial part of the day.   She points to her testimony at hearing that she

08  uses "a little two-pound vacuum that's like one of those little sweeper type things[,]" not a

09  normal vacuum.  (AR 56.)   She also asserts error in the ALJ's reliance on a possible car trip to

10  reject her testimony regarding her difficulty sitting without a valid basis in the evidence of

11  record.   *Tackett*, 180 F.3d at 1102-03 (road trip to California not sufficient to counter

12  physicians' opinions that claimant needed to shift positions every thirty minutes or so, where

13  there was an absence of information as to his positioning in the car and the frequency and

14  duration of rest stops).   Plaintiff further contends that nothing in the record shows her

15  performance of the other activities pointed to by the ALJ exceeded or contradicted her

16  testimony of her subjective limitations.   (*See* Dkt. 18 at 6-9.)

17        An ALJ may properly infer from evidence of a claimant's travel that she was not as

18  limited as alleged.   *See*, *e.g.*, *Tommasetti*, 533 F.3d at 1040.   However, even assuming the

19  ALJ in this case lacked the necessary information to make the inference drawn about plaintiff's

20  ability to sit for significant amounts of time (*see* AR 31), any error in relation to this finding

21  may be deemed harmless given the existence of other valid reasons for the ALJ's decision.

22  *Carmickle*, 533 F.3d at 1162-63.

REPORT AND RECOMMENDATION
PAGE -19

01        One need not be "utterly incapacitated" in order to be found disabled under the Social

02    Security Act.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).   Nonetheless, evidence of a

03    claimant's activities may form the basis of an adverse credibility determination where those

04    activities contradict the claimant's testimony or meet the threshold for transferable work skills.

05    *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair*, 885 F.2d at 603).  *See also*

06    *Molina*, 674 F.3d at 1112-13( "While a claimant need not '"vegetate in a dark room"' in order

07    to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant

08    reports participation in everyday activities indicating capacities that are transferable to a work

09    setting.   Even where those activities suggest some difficulty functioning, they may be grounds

10    for discrediting the claimant's testimony to the extent that they contradict claims of a totally

11    debilitating impairment.").

12        In this case, the ALJ reasonably pointed to plaintiff's own report of her activities, in

13    December 2010 and April 2011, as demonstrating her limitations were not as significant as

14    alleged.  (AR 31.)   The activities identified by the ALJ included: that she cared for her two

15    children, then ages three and a half and five years old, prepared her children's meals, may go

16    outside and watch them ride their bikes, and cared for a dog, while a roommate provided

17    assistance in caring for the dog and playing with her kids; she did laundry two-to-three times

18    per week with assistance; drove a car and shopped in stores two times per week; watched

19    television and movies, played board games, and went to the park; and visited and watched her

20    kids play outside.   (*Id.*)   The ALJ noted "that caring for children can be quite demanding both

21    emotionally and physically," and found plaintiff's "ability to care for two young children, even

22    with some assistance, suggests that her limitations are not as significant as alleged."  (*Id.*)

REPORT AND RECOMMENDATION
PAGE -20

01   The ALJ contrasted plaintiff's report at hearing that she did minimal household chores with her

02   report in a December 2011 mental evaluation that "she vacuumed daily and could not sit down

03   to eat a meal until she had cleaned the kitchen."   (*Id.* (citing AR 500).)   She also subsequently

04   noted the report from plaintiff's mother that plaintiff "cared for her two young children,

05   including helping them get dressed, preparing their meals, and driving them to school."   (*Id.*)

06       The ALJ reasonably relied on the evidence of plaintiff's activities.   *Orn*, 495 F.3d at

07   639; *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *Thomas*, 278 F.3d at 958-59.

08   *See also Rollins*, 261 F.3d at 857 (ALJ appropriately considered plaintiff's ability to care for her

09   children while husband worked long hours six days a week, along with other evidence of

10   numerous activities outside the home).   Indeed, "[o]ne strong indication of the credibility of an

11   individual's statements is their consistency, both internally and with other information in the

12   case record."   SSR 96-7p.   While plaintiff views the activities cited by the ALJ as minimal,

13   she fails to demonstrate the ALJ's interpretation of this evidence, including plaintiff's ability to

14   care for two small children, was not rational.

15   C.   <u>Other Reasons</u>

16       The ALJ noted that plaintiff rated her pain as moderate and only reported "some"

17   limitations with her activities to medical providers, and that she has not always sought

18   consistent significant treatment for her impairments during the period at issue, suggesting her

19   limitations are not as significant as alleged.   (AR 31.)   The ALJ, therefore, provided

20   additional clear and convincing reasons for finding plaintiff less than fully credible.   *See*

21   *Tonapetyan*, 242 F.3d at 1148 (ALJ appropriately considers inconsistency with the evidence

22   and a tendency to exaggerate in rejecting a claimant's testimony); *Greger v. Barnhart*, 464 F.3d

01   968, 972 (9th Cir. 2006) (ALJ may consider a claimant's inconsistent or non-existent reporting

02   of symptoms); and *Tommasetti*, 533 F.3d at 1039 (ALJ appropriately considers an unexplained

03   or inadequately explained failure to seek treatment or follow a prescribed course of treatment);

04   *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that "evidence of 'conservative

05   treatment' is sufficient to discount a claimant's testimony regarding severity of an

06   impairment").  For this reason, and for all of the reasons set forth above, plaintiff fails to

07   demonstrate reversible error in the ALJ's credibility assessment.

08   <u>CONCLUSION</u>

09         For the reasons set forth above, this matter should be AFFIRMED.

10         DATED this <u>12th</u> day of February, 2014.

11

12

                            Mary Alice Theiler

13                             Chief United States Magistrate Judge

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION
PAGE -22